# Ross et al. *versus* The City of Philadelphia.

1. Under the Act of April 21st, 1858, P. L. 386, no debt or contract, incurred or made, is binding upon the city of Philadelphia, unless authorized by law or ordinance, and an appropriation sufficient to pay the same be previously made by councils.

2. Municipal officers have no general authority to bind the city. The authority of its agents is special.

3. A purchased from B, a municipal corporation, a certain lot of land, giving in part payment thereof a mortgage upon the same. By mistake possession was taken of another lot belonging to B, upon which A erected a building. B by mistake rented the second lot to C, and C by mistake occupied the first lot. A having neglected to pay the mortgage, B issued a *scire facias* on it, *held* that B was entitled to recover the full amount of the mortgage, for the rent received by the city was not derived from the mortgaged lot, although that was the one occupied by C.

January 17th, 1887. Before MERCUR, C. J. GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J., absent.

ERROR to the Court of Common Pleas No. 4, of *Philadelphia County*: Of January Term, 1886, No. 200.

This was a *scire facias sur* mortgage brought by the city of Philadelphia against Joseph Ross and Eugene S. Stull.

The facts as they appeared on the trial of the case before ARNOLD, J., sufficiently appear in the opinion of the Supreme Court.

On the trial the defendant made the following five offers of evidence which were overruled:

Defendants offer to show that Hancock received proposals from them for an exchange of these lots, carried the proposals to the Land Committee, and returned with the message purporting to come from them, to be followed up by showing a deed from the city to the defendants for the lot on which house was built; the offer to comprise the substance of the message.

Overruled. Exception to defendants. (First assignment of error.)

Defendants offer to show an agreement with Mr. Hancock, whereby the lot first purchased was to be abandoned, and whereby as part of the consideration of the second purchase the liability incurred under the bond and mortgage now in suit to be wholly discharged.

Objection sustained. Exception to defendants. (Second assignment of error.

[Ross *v.* City of Philadelphia.]

Defendants offer to show that the entire transaction for the sale of the original lot and the acquisition of that on which in fact the Ross House was built was with G. H. Hancock, to whom the land committee through one of its members had at a sitting referred them as their agent; and that the second arrangement thus reached was, that in consideration of the purchase of the second lot, the defendant's liability on the bond first given was to cease.

Objection sustained. Exception to defendants. (Third assignment of error.)

The court overruled so much of the following offer as is enclosed in brackets:—

Defendants offer to show that Eli K. Price, as chairman of the land committee, Fairmount Park Commission, directed the witness to negotiate the sale of the land mortgaged to defendants; that the witness thus negotiated in behalf of the Park Commission acting through its land committee: and consummated a sale to the defendants; that thereafter it was discovered that by mistake the house of defendants had been erected on the wrong lot, and this witness still employed by the said commission, acting through the said land committee, then consummated the sale to defendants of the adjacent lot [in consideration among other things of their release and discharge from all liability under and on account of the bond and mortgage now in suit; and that the defendants gave their new bond and mortgage upon that understanding.]

Exception to defendants. (Fourth assignment of error.)

Defendants offer to show the reasonable value of this lot for use and occupation. Overruled. Exceptions to defendants. (Fifth assignment of error.)

The defendant presented the following points for charge, all of which were refused.

1. This is a proceeding to collect a debt alleged to be due, and if the jury believe that the defendants do not owe the plaintiff the sum in controversy their verdict should be for the defendants without regard to the legal title to the land mortgaged. (Sixth assingnment of error.)

2. The fact that the defendants executed the mortgage is not conclusive of their liability in this action. If the mortgage was executed in order to secure possession of a certain lot of land from the city, and the city did not give them possession of that lot, but leased it to others and derived a revenue from it prior to their deed to the defendants, and since, so that the defendants have never occupied, used or enjoyed it, the verdict of the jury should be for the defendants. (Seventh assignment of error.)

3. If the jury believe that the city, acting through the Park

Commission, agreed with the defendants that in consideration of their purchase of the lot on which their building was erected they, the defendants, should be discharged from all liability under the bargain first made by them, that is to say, under the bond and the mortgage now in suit, and that the defendants did pursuant to such agreement make that purchase, then the verdict should be for the defendants, without regard to the legal title to the land mortgaged. (Eighth assignment of error.)

4. That if the jury find as a fact that there was such an agreement as is indicated in the third point, to wit, an agreement to discharge the defendants from all liability under the bond and the mortgage now in suit, made by the Park Commission or any person or persons in their behalf, such agreement would be binding upon the city, notwithstanding the fact that she holds the mortgage in suit and the deed to the defendants was delivered. (Ninth assignment of error.)

5. That the point of this defense is, that there remains no liability in the defendants to pay the debt which is the subject of the suit, and the jury are to ascertain whether or not this was the fact, irrespective of the effect of the conveyances (apart from the mortgage deed) which are in evidence. (Tenth assignment of error.)

6. That the Park Commission had authority to act through its land committee in the sale of the land purchased by the defendants; and the land committee had authority to deal with intended purchasers through an agent: so that if the jury believe that Mr. Hancock was such agent, he could bind the Park Commission by what he said and did within the scope of his agency; and if the jury find that in acting within the scope of his agency Mr. Hancock agreed that the defendants should be discharged from all liability under their bond and the mortgage now in suit, in consideration of their purchase of the lot on which their building was erected, then their verdict should be for the defendant. (Eleventh assignment of error.) The court charged the jury as follows:—

GENTLEMEN OF THE JURY: The circumstances shown in this case disclose a great hardship on the part of these defendants, but in the present suit the verdict must be in favor of the city for the full amount of the mortgage and interest, which, according to the statement, appears to be $9,169. (Twelfth assignment of error.)

Verdict for the plaintiff in the sum of $9,169, and judgment thereon, whereupon the defendants took this writ and filed the above assignments of error.

*William W. Wiltbank* for plaintiffs in error.—A writ of *scire*

*facias sur mortgage* is provided for by the Act of 1705. That writ requires the mortgagor to show, if anything he have to say, wherefore the mortgaged premises ought not to be seized and taken in execution for payment of the said mortgage money with interest, or to satisfy the damages for breach or non-performance, &c.

The defendant may plead satisfaction or payment of part or all the mortgage money, or any other lawful plea in avoidance of the deed or debt, as the case may require. (Purd., 569, pl. 149.)

The defendant may thus avoid the deed or debt. If he shows that there is no debt, why is he not entitled to judgment?

In the present case an entire failure of consideration is, if not formally admitted by the claimant, so far made out as to be unquestioned. The defendants gave their bond and mortgage, and a large sum in money, on receiving their deed. But the city occupied their land, continued to hold it, leased it, derived a return from it, and holds it to this day. And the city has the legal title to it, by virtue of the grant in the deed of mortgage.

*Robert Alexander* (*Charles F. Warwick* and *E. Spencer Miller* with him), for defendant in error.—It was decided by this court in Stull's Appeal, 11 W. N. C., page 350, that Mr. Hancock, the district surveyor, in giving the lines to Ross and Stull, for the premises in question, acted as the agent of Ross and Stull, and not as the agent of the city, and that the city was not liable for the mistake of the district surveyor.

The Act of April 21, 1858, P. L. 386, provides that no debt or contract hereafter incurred or made shall be binding upon the city of Philadelphia unless authorized by law or ordinance, and an appropriation sufficient to pay the same be previously made by Councils. This undoubtedly covers all cases not only of purchase but of sales by the city.

It is said in Barnes v. City, 3 Phila., 409; by Judge SHARSWOOD, that no officer has any general power to bind the city, and the authority of every agent is necessarily special. Same effect in Windrim v City, 9 Phila., 550.

There was in this case no offer to show that Councils authorized Hancock, or any one else, to negotiate for the city, or that Councils ever ratified what Hancock did.

See opinion of the Court below in this case, 42 Leg. Int., 312.

Mr. Justice PAXSON delivered the opinion of the court February 21st, 1887.

This was a *scire facias* upon a purchase money. mortgage. It appears to have been given under the following circumstances: Ross & Stull, the defendants below, in the year 1876, bought from the city a lot, forty feet front, on Elm avenue, for the sum of $8,900. Of this sum, $2,966.67 was paid in cash, and the mortgage in controversy was given for the balance of the purchase money. This lot was near the grounds of the Centennial Exhibition, and the object of the purchasers was to erect a hotel thereon for and during said Exhibition. They proceeded to erect the hotel, and, when it was being completed, they discovered that the building did not stand upon the lot they had purchased, but upon an adjoining lot, also belonging to the city. It was alleged by the defendants that the mistake arose from the surveyor giving them the wrong lines when they commenced building.

About a year thereafter, the defendants procured a deed from the city for the lot on which the hotel stood. The consideration for this deed was $4,666.67, of which $166.67 was paid in cash; the balance, $4,500 was secured by a bond and mortgage in favor of the city. So that the defendants became the owners of the two lots, with a mortgage upon each to secure the unpaid purchase money.

Another blunder occurred. As I understand the testimony, at the time the defendants took possession of the lot on which they erected their hotel, the said lot was leased to Messrs. Ashton & Crawford. The latter, instead of occupying said lot, took possession of the lot sold to the defendants by the first deed. It appears, therefore, that the defendants erected their hotel on a lot the city had leased to Ashton & Crawford, and that Ashton & Crawford, under their lease, took possession of the lot which the city had sold to the defendants. It was also in evidence that the city had received $1,200 rent from Ashton & Crawford.

The city, not having received either principal or interest upon the mortgage, sued out this *scire facias* thereon. Upon the trial below, the defendants offered no evidence of payment. They did offer to show certain parol agreements, made with city officials, whereby the lot first purchased was to be abandoned, and whereby, as part of the consideration of the second purchase, the liability incurred under the bond and mortgage now in suit, was to be wholly discharged. The offer varies in terms in some of the assignments, but they all rest upon the same principle, and may be disposed of together.

We are clear that the evidence offered was properly rejected. Both lots were sold under authority of a city ordinance, passed for the express purpose, and no offer was made to show any change of arrangement by any one having power to contract

[Ross *v.* City of Philadelphia.]

for the city. It ought to be understood by this time that "no debt or contract hereafter incurred or made shall be binding, upon the city of Philadelphia, unless authorized by law or ordinance, and an appropriation sufficient to pay the same be previously made by Councils." This is the precise language of the Act of April 21st, 1858, P. L., 386. It follows from said Act that no officer has any general power to bind the city, and the authority of its agents is necessarily special. There was no offer in this case to show that Councils authorized Hancock, or any one else, to negotiate for the city, or that Councils ever ratified what Hancock had done. The Act of 1858 is one of the greatest safeguards which the taxpayer has.

It would have been clear error to have affirmed the defendants' first point. The effect would have been to have permitted the jury to find there was no debt due the city, not only without evidence, but against the evidence.

The defendants' remaining points were based upon matters not in evidence in the case; in other words, upon the evidence which the learned judge ruled out, and it was not error to refuse them.

There was a point made at bar that the rent received by the city should, in any event, be allowed as a credit upon the mortgage. No error has been assigned to this specially, but, as it may be covered by the last assignment which alleges that the court erred, in directing a verdict for the full amount of the mortgage, I will consider it here.

Unfortunately for the defendants, as I understand the evidence, the city did not receive any rent for the lot on which this mortgage rests. But, as has been explained heretofore, the rent was received for the lot upon which the defendants built their hotel, and the title to which was in the city for the period during which the rent was paid. That the leases were also upon the wrong lot can make no difference. The rent was not collected for that lot.

This may be a hard case for the defendants; but no reason has been shown why the city should not sell the property pledged for the mortgage debt. The defendants have the legal title and, if they can defeat the mortgage, they will escape altogether. If, upon a sale, it brings less than the debt, the city can, if it thinks defendants have an equity, waive proceedings upon the bond to collect the residue. We see no reason to disturb this judgment, and it is accordingly

Affirmed.